UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

ROBIN and STEPHANIE CLARK,                                                   No. 11-13612

                              Debtor(s).
_____/

Memorandum on Motion to Dismiss
_____

       Debtors Robin and Stephanie Clark filed their Chapter 7 petition on September 29, 2011. They have "passed" the means test established by Congress to determine if a bankruptcy filing is presumptively abusive. However, the U.S. Trustee has moved for dismissal of his case pursuant to § 707(b)(3) of the Bankruptcy Code alleging that the totality of the circumstances demonstrates abuse. The sole ground for the motion is the U.S. Trustee's belief that the Clarks can afford to pay their debts.

I. Generally Applicable Law

       The court begins by noting that when there is no presumption of abuse the burden of persuading the court that the case ought to be dismissed is on the U.S. Trustee. *Hebbring v. U.S. Trustee*, 463 F.3d 902, 909 (9th Cir. 2006). See also *In re Perrotta*, 378 B.R. 434, 437 (Bankr. D. N.H. 2007)["[A]t a hearing to dismiss a case where the presumption of abuse does not arise, the burden of proof is on the moving party to establish that the case was filed in bad faith or that the totality of the circumstances of a debtor's financial situation demonstrate abuse."]; *In re Ansar*, 383 B.R. 344, 348

(Bankr.D.Minn. 2008); *In re Close*, 384 B.R. 856, 860 (Bankr.D.Kan.2008); *In re Longo*, 364 B.R. 161, 164 (Bankr.D.Conn.2007).

Before the 2005 amendments to the Bankruptcy Code, a debtor's case could be dismissed for substantial abuse based upon either lack of honesty or want of need. See *In re Behlke*, 358 F.3d 429 (6th Cir.2004); *In re Krohn*, 886 F.2d 123 (6th Cir.1989). The 2005 amendments codified the lack of honesty and want of need factors under § 707(b)(3). Pursuant to that new statute, a debtor's case can be dismissed for abuse upon either bad faith (i.e. lack of honesty) or totality of the circumstances of the debtor's financial situation demonstrates abuse (i.e. want of need). See *In re Oot*, 368 B.R. 662, (Bankr.N.D.Ohio 2007); *In re Wright*, 364 B.R. 640, (Bankr.N.D.Ohio 2007); *In re Henebury*, 361 B.R. 595 (Bankr.S.D.Fla.2007); *In re Mestemaker*, 359 B.R. 849 (Bankr.N.D.Ohio 2007); *In re Simmons*, 357 B.R. 480 (Bankr.N.D.Ohio 2006). "It is a closely related fundament of statutory construction that, where Congress codifies prior case law, those prior holdings remain not only good law, but should serve as a valuable touchstone for interpreting the statute." *In re Oot*, 368 B.R. 662, (Bankr.N.D.Ohio 2007) ( citing *CoStar Group Inc. v. LoopNet, Inc.*, 373 F.3d 544, 553 (4th Cir.2004)). Therefore, most courts look to pre-2005 decisions to provide guidance in evaluating motions to dismiss under § 707(b)(3). *In re Davis*, 378 B.R. 539, 547 (Bkrtcy.N.D.Ohio 2007).

II. Totality of the Circumstances

No statutory guidance is provided in § 707(b)(3) as to the factors to consider in evaluating the totality of the circumstances, other than they are to be considered as they relate to the debtor's "financial situation." However, courts that have conducted this analysis have recognized that the section is "best understood as a codification of pre-BAPCPA case law, and as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse." *In re Stewart*, 383 B.R. 429, 432 (Bankr.N.D.Ohio 2008). In this circuit, the court has recognized a non-exclusive list of factors to be considered when evaluating the totality of the circumstances, including (1) whether the debtor has a likelihood of sufficient future income to fund a Chapter 11, 12, or 13 plan which would

2

pay a substantial portion of the unsecured claims; (2) whether the debtor's petition was filed as a consequence of illness, disability, unemployment, or some other calamity; (3) whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his or her ability to repay them; (4) whether the debtor's proposed family budget is excessive or extravagant; (5) whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and (6) whether the debtor has engaged in eve-of-bankruptcy purchases. Of these, the primary factor is the debtor's ability to pay as determined by his ability to fund a Chapter 13 plan. *In re Price,* 353 F.3d 1135, 1139-40 (9th Cir. 2004).

III. Factors in the Case

The reason for the Clarks' bankruptcy is not difficult to discern. Like so many of their fellow citizens, they lost their home to foreclosure in 2008 when the housing market collapsed. The foreclosure by the senior lender rendered the holder of the second deed of trust a sold-out junior. This creditor sued the Clarks and obtained a six-figure judgment against them. Like so many debtors in this position, the Clarks looked to the bankruptcy laws for relief.

The Clarks have three children, aged 17, 14 and 7. One of the children has a serious health problem. Their budget is modest in every respect. They drive modest cars. They shop at Walmart and Target, not upscale stores. Although the test for finding abuse in this case the "totality" of the circumstances, the U.S. Trustee points to only a single circumstance as justifying dismissal: his belief that the Clarks can afford to pay their debts. The court finds that the U.S. Trustee has not made out his case, either under the facts or the law.

The court is not persuaded by the U.S. Trustees analysts that the Clarks have anything like the ability to pay he alleges. The court finds credible the testimony of the Clarks themselves that their true disposable income is about $8,950.00 per month.[1]  Their housing expense alone is $3,500.00 per

---

[1]The court finds nothing culpable in Stephanie's decision to leave her job.

3

month, and from the balance they must keep a family of five properly fed, clothed and cared for, plus make payments on a nondischargeable tax debt.[2] The U.S. Trustee has not met his burden of showing that the Clarks can afford to pay even a fraction of their debt.

Even if the U.S. Trustee had met his burden factually, the law would not require the court to automatically throw the Clarks out of bankruptcy. In this case there are other factors which the court also elects to consider and reinforce the court's determination that it should not dismiss this case.[3] Most prominent of these is the very reason the Clarks filed their Chapter 7 petition. Their bankruptcy was not the result of irresponsibility, financial mismanagement or an extravagant lifestyle. Like many other families across the nation, they were devastated by a financial crisis not of their making. Having suffered not just the calamity of foreclosure itself but also a large debt rendered unsecured by the foreclosure, bankruptcy is their only hope for starting over, living a normal life and properly raising their children. Bankruptcy is the relief Congress intended for people like the Clarks. They are using the bankruptcy laws properly, not abusively.

IV. Conclusion

The U.S. Trustee has failed to convince the court that the Clarks have the ability to pay more than a small percentage of their debts while properly taking care of their family. Moreover, even a

---

[2] Adding insult to injury, homeowners who suffer a foreclosure often find that the loss of their home triggers a substantial capital gains tax. The record is silent on whether that is the case here.

[3] As the court noted in *In re McGillis*, 370 B.R. 720, 746n30 (Bkrtcy.W.D.Mich.2007): " There could be in any particular case a whole host of circumstances that a court would have to consider before making any final assessment as to the debtor's financial condition under that section. Indeed, it would appear that non-financial factors could also still be relevant, for Section 707(b)(3)(B) requires only that the court consider the debtor's financial condition in connection with the broader question of whether there has been an abuse under Section 707(b)(1). The implication, of course, is that there may be factors outside of the debtor's financial condition that would mitigate a finding of abuse otherwise justified under Section 707(b)(3)(B) or, alternatively, there may be other factors that would warrant a finding of abuse even though consideration of only financial circumstances under Section 707(b)(3)(B) would not."

finding that they could pay more of their debt would not necessarily mean that the Clark's bankruptcy must be dismissed. Where, as here, the debtors have acted responsibly, live modestly, and are using the bankruptcy laws to start over after foreclosure, ability to pay some debt is not by itself such an overarching circumstance that dismissal is mandated. The motion to dismiss will accordingly be denied.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for the Clarks shall submit an appropriate form of order forthwith.

Dated: April 15, 2012

Alan Jaroslovsky
U.S. Bankruptcy Judge